CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
OCT 19 2012
JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| In re: ) <br> ) <br> DANIEL R. OSTEEN and ) <br> RHONDA G. OSTEEN, ) <br> ) <br> Debtor. ) <br> ) <br> ) <br> WILLIAM E. CALLAHAN, JR., Trustee, ) <br> ) <br> Plaintiff/Appellant, ) <br> ) <br> v. ) <br> ) <br> DANIEL R. OSTEEN, ) <br> RHONDA G. OSTEEN, ) <br> DEUTSCHE BANK NATIONAL TRUST ) <br> COMPANY, ) <br> RICHARD T. CREGGER, ) <br> OCWEN LOAN SERVICING, LLC, and ) <br> SAXON MORTGAGE SERVICES, INC., ) <br> ) <br> Defendants/Appellees. ) | Civil Action No. 3:12-cv-00023 <br><br> **MEMORANDUM OPINION** <br><br> By: Hon. Glen E. Conrad <br> Chief United States District Judge |

This case arises from a bankruptcy petition filed by defendants Daniel R. Osteen and Rhonda G. Osteen (together, the "Osteens") on November 4, 2009 in the U.S. Bankruptcy Court for the Western District of Virginia. William E. Callahan (the "Trustee") was appointed trustee of the bankruptcy estate and filed a complaint seeking to avoid a pre-petition transaction in which the Osteens gave their mortgage lender a "Deed of Confirmation of Deed of Trust," guaranteeing the lender's right to a first lien interest in the Osteens' land. The complaint alleges claims under both federal bankruptcy and Virginia state law, contending that there was insufficient consideration in the transaction between the Osteens and their lenders, and that the

transfer should be avoided for that reason. The deed of trust on the land is currently held by Deutsche Bank National Trust Company, and has been at various times serviced by Ocwen Loan Servicing, LLC, and Saxon Mortgage Services. Richard T. Cregger is the current trustee under the deed of trust. These defendants will be collectively referred to as the "Bank." The Osteens and the Bank each filed motions to dismiss the complaint, and the Bankruptcy Court entered judgment for the defendants, holding that the applicable federal and state law standards for adequate consideration had been met. The Trustee filed a timely notice of appeal, and the matter is currently ripe for adjudication. For the reasons that follow, the court concludes that the Bankruptcy Court was correct in determining that the transaction could not be avoided for a lack of consideration, and, accordingly, affirms the order of the Bankruptcy Court.

I.      **Factual and Procedural Background**

The Osteens were the fee simple owners of a piece of real property located in Fluvanna County, Virginia (the "Property"). On December 12, 2006, the Osteens obtained a non-purchase money loan from WMC Mortgage Corp. ("WMC") to use in refinancing their mortgage on the Property. Pursuant to the loan, the Osteens signed a promissory note in the amount of $143,650.00 and secured the note with a deed of trust. WMC subsequently lost the deed of trust and never recorded it. Almost two years later, on December 11, 2008, after it was discovered that the deed of trust had never been recorded, Mr. Cregger filed a complaint against the Osteens in the Fluvanna County Circuit Court. The complaint sought an order confirming that Mr. Cregger held equitable title to the Property as the trustee on the deed and that WMC held a perfected first lien security interest in the Property. Mr. Cregger also filed a Notice of Lis Pendens.

2

In March of 2009, the parties entered into a settlement agreement (the "Settlement Agreement") wherein the Osteens agreed to deliver a Deed of Confirmation of Deed of Trust and an Affidavit of Lost Instrument to Mr. Cregger, who was then to record the deed. In exchange for this, Mr. Cregger agreed to voluntarily dismiss the lawsuit and request that the Lis Pendens be released. The Deed of Confirmation of Deed of Trust was recorded in the records of the Clerk of the Circuit Court of Fluvanna County on July 27, 2009. On October 29, 2009, Mr. Cregger nonsuited the lawsuit and filed a partial release of the Lis Pendens. On November 4, 2009, the Osteens filed a petition for relief under Chapter 13 of the U.S. Bankruptcy Code.[1] On July 20, 2010, the case was converted to one arising under Chapter 7, and the Trustee filed a motion to have an independent attorney investigate and prosecute a claim against the Osteens and the holder of the note under U.S. Bankruptcy Code § 548. The Trustee then filed the instant complaint alleging three counts. Count One seeks to avoid the Osteens' obligations under the Settlement Agreement and the attendant transfer of the Deed of Confirmation of Deed of Trust under 11 U.S.C. § 548(a). Count Two seeks to void the Settlement Agreement and the Deed of Confirmation of Deed of Trust under 11 U.S.C. § 544(b)(1) and Va. Code Ann. § 55-81. Count Three seeks to avoid any obligation as to the current holder of the deed of trust under the allegedly unperfected original deed of trust pursuant to 11 U.S.C. § 544(a).

The Osteens and the Bank each filed motions to dismiss pursuant to Rule 7012 of the Federal Rules of Bankruptcy Procedure, which incorporates Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Bankruptcy Court treated the motions to dismiss as motions for

---

[1] On November 19, 2009, the Osteens filed an adversary proceeding in the Bankruptcy Court against Mr. Cregger, Saxon, Ocwen, Ralph E. Main as trustee, and American General Financial Services, Inc., challenging the validity of the Deed of Confirmation of Deed of Trust on the grounds that the Osteens had not received their bargained for consideration as part of the Settlement Agreement. The parties eventually settled this claim and the Osteens received $6,000.00 from Saxon and Ocwen, in addition to certain mortgage concessions.

3

summary judgment under Rule 12(d) and entered judgment in favor of the defendants on all counts.

II. **Discussion**

A. **Standard of Review**

The standard of appellate review for the granting of summary judgment is de novo. Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994). A moving party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In evaluating whether a genuine issue exists, courts must construe all facts and reasonable inferences in the light most favorable to the nonmovant. Nourison Rug Corp. v. Parvizian, 535 F.3d 295, 299 (4th Cir. 2008).

B. **Analysis**

i. **Claim under 11 U.S.C. § 548(a)(1)(B)**

The first count of the complaint alleges that the Trustee may avoid the transfer of the Deed of Confirmation of Deed of Trust as a fraudulent conveyance under § 548 of the U.S. Bankruptcy Code. Section 548 provides that a trustee "may avoid any transfer" of an interest in the debtor's property that was made on or within two years of the date of the filing of the bankruptcy petition, if the debtor received "less than a reasonably equivalent value" in exchange for such transfer, and the debtor was insolvent on the date of the transfer or was made insolvent

4

as a result of such transfer.[2] 11 U.S.C. § 548(a). The parties do not dispute that the debtor was insolvent at the time of the transfer or that the transfer occurred within two years of the Osteens' bankruptcy petition. At issue is whether the transfer was in exchange for reasonably equivalent value.

The word "value" is defined in § 548 as "property, or satisfaction or *securing of a present or antecedent debt of the debtor*." 11 U.S.C. § 548(d)(2)(A) (emphasis added). The value each party receives in securing antecedent debt is the value of the funds disbursed to the debtor, and the guarantee of repayment of such funds to the creditor. Caselaw makes clear that transfers may not be avoided under § 548 merely because the consideration consists of secured antecedent debt. See Pereira v. Dow Chem. Co. (In re Trace Int'l Holdings, Inc.), 287 B.R. 98, 110 (Bankr. S.D.N.Y. 2002) ("Trace I") ("Payment of antecedent debt . . . constitute[s] sufficient consideration . . . ."); Anand v. National Republic Bank of Chicago (In re Anand), 239 B.R. 511, 517 (N.D. Ill. 1999) ("There is no dispute that collateralization of an antecedent debt confers value on the debtor, since the bankruptcy statute's definition of 'value' includes 'securing of a present or antecedent debt of the debtor.'"); In re Countdown of Connecticut, Inc., 115 B.R. 18,

---

[2] Section 548(a)(1) provides in full:
 The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
 . . .
 B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
 (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
 (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;
 (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or
 (IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

5

21 (Bankr. Conn. 1990) (stating that under "Code § 548(d)(2)(A) an antecedent debt constitutes value for the granting of a security interest" and that "the transfer of the security interest by [a] debtor [does] not have to be contemporaneous with the defendant's loan to the debtor").

The relevant question then becomes whether the value exchanged by the collateralization of a past debt constitutes "reasonably equivalent value." The Trustee correctly points out that the determination of reasonably equivalent value is generally fact specific and must be measured by looking at the totality of the circumstances. Official Comm. of Unsecured Creditors v. Wachovia (In re Heilig-Meyers Co.), 297 B.R. 46, 52 (Bankr. E.D. Va. 2003); see also In re Jordan, 392 B.R. 428, 441 (Bankr. D. Idaho 2008) ("The determination of reasonable equivalence must be made as of the time of transfer . . . and is analyzed from the point of view of the debtor's creditors [as to whether the transfer led to] diminution of a debtor's prepetition assets."). However, most courts that have considered the question have determined that the securitization of antecedent debt will nearly always amount to reasonably equivalent value.

For example, in Geron v. Palladin Overseas Fund, Ltd., et al. (In re Applied Theory Corp.), 323 B.R. 838 (Bankr. S.D.N.Y. 2005), the Court rejected a § 548(a) claim on the grounds that the debtor's grant of a security interest to guarantee a prior $30 million loan necessarily constituted reasonably equivalent value. The Court reasoned that "[t]he security interest did not provide the Lenders with a right to receive anything more than the amount of the money they had provided, and the debtor's liabilities did not increase due to the security interest." Id. at 841. The Court held that when antecedent debt constitutes "borrowed money that was actually received," the securitization of that very same debt will usually amount to reasonably equivalent value. Id. at 841, 844.

6

Similarly, in In re Anand, the district court affirmed the bankruptcy court's decision holding that the assignment of interest in real estate as collateral to secure past bank loans amounted to reasonably equivalent value. 239 B.R. at 517. The Court noted that it was prevented by Seventh Circuit caselaw from adopting the bankruptcy court's determination that the securitization of antecedent debt necessarily amounted to reasonably equivalent value as a matter of law,[3] but held that it was a very strong indicator that the standard had been met. Id. at 517-18. The Court explained:

> [the] value conferred on the debtor is no less significant when the debtor provides security for an antecedent debt, rather than doing so at the time of the original loan transaction. When one focuses on the fact that the value the debtor receives is the proceeds of the loan itself . . . the [the bankruptcy court judge's] approach is eminently sensible. By definition, a security interest is pegged to the value of the secured assets; a high degree of equivalence between the two values is, therefore, a safe assumption.

Id. at 518 (citing In re Southmark Corp, 138 B.R. 820, 830 (Bank. N.D. Tex. 1992) (finding that the collateralization of debt "guaranteed that [the debtor] would receive reasonably equivalent value in exchange for the pledge of securities" because the lender "could liquidate the collateral

---

[3] The district court stated "although the court can find no flaws in [the bankruptcy court judge's] conclusion that Anand received reasonably equivalent value as a matter of law, the court is constrained to consider facts that the bankruptcy court did not." Id. at 518. The bankruptcy court's explanation for adopting a per se rule is as follows:
> It is obvious that when dealing with the exchange of one asset for another, the court must compare the value of what the debtor surrendered with what the debtor received. But here the Debtor did not give up all of his interest in the Mokena property; he only gave the bank an interest in that property sufficient to secure payment of his debts. The difference is critical.
>
> A secured creditor does not own the collateral securing a debt; the creditor has no rights in the collateral except as necessary to protect the claim. The debtor continues to own the property; the secured creditor has only the right to force its liquidation for the sole purpose of paying the secured debt. A secured creditor is not entitled to collect more than the amount of the debt from such a liquidation of the collateral. Any collateral value in excess of the debt is available to satisfy other creditors. The debtor, notwithstanding the transfer of a security interest, can realize the value of the collateral in excess of the debt by selling the property or borrowing on a junior lien. The value of the property, beyond the amount of the debt, is therefore not lost to the debtor or other creditors as a result of the transfer.

In re Anand, 210 B.R. 456, 458-59 (Bank. N.D. Ill. 1997) (citations omitted).

7

up to the amount of the demand and related obligations under the pledge agreement but had to return the unused portion of the collateral").

The ruling in Pereira v. Dow Chem. Co. (In re Trace Int'l Holdings, Inc.), 301 B.R. 801, 805 (Bankr. S.D.N.Y. 2003) ("Trace II"), supports this conclusion as well. In that case, the Court held that a "preferential transfer that satisfied an antecedent debt could not be deemed to be a fraudulent conveyance because the existence of the antecedent debt satisfied the requirement of reasonably equivalent value or fair consideration." Id. at 805. The Court explained that "[p]ast consideration is good consideration. An antecedent debt satisfies the requirement of fair consideration and reasonably equivalent value, and putting aside transfers to insiders, the payment of an existing liability is not fraudulent." Id. (quotation marks omitted); see also In re Heilig-Meyers Co., 297 B.R. 46, 54 (Bankr. E.D. Va. 2003) (granting a motion to dismiss on the ground that the issue of reasonably equivalent value was "not just one of fact but also implicates a general principle derived from the cases that a transfer of assets for liens will ordinarily be reasonably equivalent value").

Courts that have rejected the proposition that the collateralization of past debt automatically constitutes reasonably equivalent value have relied on a set of distinguishing characteristics. For example, a number of cases involve transfers allegedly made to inside parties closely associated with the debtor. See Warren v. Abreu (In re Skumpija), No. 11-00338, 2011 WL 5909263 (Bankr. E.D. N.C. 2011) (denying a motion to dismiss a complaint alleging a fraudulent transfer between a debtor and a corporation owned by the debtor's spouse); Kipperman v. Onyx Corp., 411 B.R. 805, 851 (N.D. Ga. 2009) (holding that transfers reducing a debt provide reasonably equivalent value if the transferee is not an officer, director, or major shareholder of the transferor). Other cases have involved questions as to whether the debtor

8

actually received the prior loan proceeds. See Stillwater Nat'l Bank and Trust Co. v. Kirtley (In re Solomon), 299 B.R. 626, 637 (10th Cir. BAP 2003) (holding that transfers do not necessarily constitute reasonably equivalent value where the "debtor received no loan proceeds from the antecedent debt and [the debtor] only provides the security for a third party's antecedent debt"). Such considerations raise additional questions of fact as to the intentions of the parties and require a closer evaluation of whether the transfer was for reasonably equivalent value. The case at hand involves no such allegations of a transfer between insiders or a question as to whether the Osteens actually received the loan proceeds.

The Osteens secured antecedent debt when they agreed to transfer the Deed of Confirmation of Deed of Trust to their lenders pursuant to the Settlement Agreement. They had received $143,650 in funds in 2006 from WMC when they first transferred a deed of trust on the Property. Three years later, they secured that debt by a new Deed of Confirmation of Deed of Trust that entitled WMC to rights in collateral up to the amount of the note. The exchange was thus for reasonably equivalent value—the $143,650 the Osteens received in exchange for a secured interest in that same amount held by the current trustee, Mr. Cregger.

The Bankruptcy Court in this case determined that the securitization of antecedent debt necessarily amounts to reasonably equivalent value. See Callahan v. Osteen et al., No. 09-63551 (Bankr. W.D. Va. Mar. 30, 2012) ("The granting of a security interest in collateral for an antecedent debt does not constitute a fraudulent conveyance under Section 548 because the granting of a security interest will always constitute reasonably equivalent value."). However, this court need not determine whether such a per se rule is correct, because under the facts of this case, it is clear that the value of the Deed of Confirmation of Deed of Trust did not significantly exceed the $143,650 loan that the Osteens received in 2009. No matter what the Bank attempted

9

to do with its newly perfected security interest, it would never be able to obtain anything more than the debt proceeds for which its interest served as collateral. Likewise, the Osteens did not shortchange themselves by making the transfer—they received $143,650, for which they transferred a comparable interest in their land.

It is the Trustee's position that the Bank, in asking for the Deed of Confirmation of Deed of Trust, was simply seeking to perfect an already securitized loan in an attempt to improve its position relative to other creditors with interests in the Property.[4] The Trustee argues that the transfer did not give the Bank any new security on the pre-existing debt, and that it simply reaffirmed an interest the Bank already possessed in an effort to gain priority over other creditors. However, such a position attempts to transform a fraudulent conveyance claim under § 548(a) into a preference action under § 547(b). In certain circumstances, transfers may be avoided when they are made with an eye towards benefiting certain creditors over others. 11 U.S.C. §547(b). However, § 547(b) requires that such transfers are avoidable only when the lien that is the subject of the transfer is perfected within ninety days of the date the debtor filed its bankruptcy petition. 11 U.S.C. § 547(b)(4). Perhaps because there is no question that the Deed of Confirmation of Deed of Trust was perfected more than ninety days before the Osteens filed for bankruptcy, and thus cannot be avoided under the preference statute, the Trustee styled his complaint as a fraudulent conveyance action under § 548(a). Whatever the reason, the Trustee's fraudulent conveyance claim must fail because, as addressed above, the Osteens received reasonably equivalent value when they transferred the Deed of Confirmation of Deed of Trust. Other courts have addressed the issue of creditors conflating the preferential and fraudulent conveyance statutes, and have found the argument unpersuasive. See <u>In re Kaplan Breslaw Ash,</u>

---

[4] Perfection of a lien is a transfer under § 548(d)(1).

10

LLC, 264 B.R. 309, 330 (Bankr. S.D. N.Y. 2001) ("If a debtor gives a mortgage to secure a debt it already has—an antecedent debt—and meets the other statutory requirements . . . the giving of that mortgage may be a preference, but it is not a fraudulent conveyance."); see also Trace I, 301 B.R. at 805-06 ("Past consideration is good consideration. . . . [T]he preferential transfer does not constitute a fraudulent conveyance.").

Moreover, whatever legal merit there may be in the distinction between securitization and perfection with respect to fraudulent transfers, the court finds the lack of an equitable distinction in this case to be significant. Both defendants intended all along for the Bank to hold an interest in the Property up to the amount of the loan, and the Settlement Agreement helped accomplish that mutual intent by making sure the Bank held security for the Osteens' debt. It would be a perversion of the intent of both parties—an intent that was first evinced in 2006 and remained in place in 2009—to hold that Mr. Cregger's failure to record the deed could somehow defeat the Bank's right to an interest in the Property. The Settlement Agreement granted the Bank the interest that the Osteens thought they had already given up, and it compensated the Bank for the funds it had previously lent to the Osteens. At no point was either party attempting to circumvent the purpose of the notice statute, which is simply to make outside parties aware of any interests that may be held in a property, and the court should not rearrange ex post facto the parties' interests in the name of the fraudulent conveyance statute. The transfer of the Deed of Confirmation of Deed of Trust pursuant to the Settlement Agreement was for reasonably

equivalent value, and thus cannot be avoided under § 548(a). Accordingly, the Bankruptcy Court's decision as to Count One is affirmed.[5]

### ii.     Claim under 11 U.S.C. § 544(b)(1) and Va. Code § 55-81

In Count Two, the Trustee seeks to avoid the transfer under U.S. Bankruptcy Code § 544(b)(1), which gives the trustee in a bankruptcy case power to avoid any transfer of an interest of the debtor that is voidable under applicable state law.[6] This essentially gives the Trustee standing to bring a cause of action seeking to void the transfer under Va. Code § 55-81. Section 55-81 provides that every transfer by an insolvent transferor which is "not upon consideration deemed valuable in law shall . . . be void as to creditors whose debts shall have been contracted at the time it was made." To avoid a transfer under this statute, the plaintiff "must demonstrate that (1) a transfer was made, (2) the transfer was not supported by consideration deemed valuable in law, and (3) the transfer was done when the transferor was insolvent or the transfer rendered the transferor insolvent." Shaia v. Meyer (In re Meyer), 244 F.3d 352, 353 (4th Cir. 2001). The second element simply refers to "*any* valuable consideration received by the transferor," Id. (emphasis in original) (citation omitted), and "does not require reasonably equivalent value." C-T of Virginia v. Euroshoe Assoc. Ltd. Partnership, No. 91-1578, *2, 1992 WL 12307 (4th Cir.

---

[5] Although the Bankruptcy Court did not address the issue, the defendants also argued that they received reasonably equivalent value under the conditions of the Settlement Agreement ending the lawsuit between the Osteens and the Bank. There is some authority for the proposition that a release from litigation can serve as adequate consideration under § 548(a), see In re Jordan, 392 B.R. at 442 ("Reasonable equivalence can clearly include the elimination of claims or litigations."), however, because the court has determined that the securitization of antecedent debt constitutes reasonably equivalent value in this case, the court need not, and does not, reach the defendants' additional arguments.

[6] Section 544(b)(1) provides in full:
>  Except as provided in paragraph (2), the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

12

Jan. 29, 1992). Thus, the consideration requirement under § 55-81 is less stringent than under § 548(a) of the U.S. Bankruptcy Code. Because the court has determined that the securitization of the Osteens' antecedent debt constitutes reasonably equivalent value under § 548(a), it necessarily suffices as any valuable consideration under § 55-81. Moreover, Virginia law makes clear "that antecedent debt . . . constitutes valuable consideration for granting of a deed of trust." United Steel Supply, LLC v. D&E Acquisition Corp., Inc., No. 7:11cv00326, *3, 2011 WL 6176224 (W.D. Va. Dec. 1, 2011) (citing Inspiration Coal, Inc. v. Mullins, 690 F. Supp. 1502, 1505 (W.D. Va. 1988)); see also Bank of Commerce v. Rosemary & Thyme, Inc., 218 Va. 781, 784 (1978). As explained above, the Osteens' receipt of the $143,650.00 in loan proceeds in exchange for the mortgage on the Property certainly qualifies as some valuable consideration, and the Bankruptcy Court's decision as to Count Two is affirmed.

### iii. Claim under 11 U.S.C. § 544(a)(3)

Lastly, the Trustee seeks to avoid the transfer under 11 U.S.C. § 544(a)(3). This section of the bankruptcy code gives trustees the rights and powers of bona fide purchasers for value of the debtor's property. Thus, if the Deed of Confirmation of Deed of Trust is set aside and the transfer avoided, the original deed of trust would remain unrecorded and unperfected, and, the Trustee, as a bona fide purchaser, would have first rights to the proceeds of the sale of the Property. However, having determined that the transfer should not be set aside, the Trustee is unable to prevail on Count Three, and the Bankruptcy Court's decision is affirmed.

## III. Conclusion

The Appellant has failed to show why the transfer of an interest in the Osteens' Property was not for adequate consideration under the applicable federal and state laws. As a result, the Bankruptcy Court's decision will be affirmed in all respects. An appropriate order shall issue.

The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to the parties.

**ENTER**: This 19th day of October, 2012.

/s/ Jsue Conrad
Chief United States District Judge